**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST, | ) | |
| COMPANY, AS TRUSTEE FOR | ) | |
| HOME EQUITY MORTGAGE LOAN | ) | |
| ASSET-BACKED TRUST SERIES | ) | |
| IN ABS 2006-A, HOME EQUITY | ) | |
| MORTGAGE LOAN ASSET-BACKED | ) | |
| CERTIFICATES SERIES IN ABS 2006-A | ) | Civil Action No. 3:17-cv-833 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG BUCK, and | ) | |
| THE BUCK LAW FIRM, PC, | ) | |
| | ) | |
| Defendants, and Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALTISOURCE PORTFOLIO SOLUTIONS, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

---

**CRAIG BUCK AND THE BUCK LAW FIRM, PC'S BRIEF IN RESPONSE**
**TO ALTISOURCE'S MOTION TO DISMISS**

Defendants and Third-Party Plaintiffs Craig Buck ("**Mr. Buck**") and The Buck Law Firm, PC ("**The Firm**" and together with Mr. Buck, the "**Lawyers**"), by counsel, provide as follows for their Brief in Response to the Motion to Dismiss filed herein by Altisource Portfolio Solutions, Inc. ("Altisource").

## I.      INTRODUCTION

### A.      General Background

On December 15, 2017, Deutsche Bank National Trust Company ("Plaintiff") filed its

Complaint against the Lawyers. The Complaint relates to a real estate transaction in which Plaintiff was the seller of real property located at 9910 Windridge Drive in Fredericksburg, Virginia (the "Property"). The buyer in that real estate transaction was Land Trust Windridge (the "Buyer").

The Buyer retained the Lawyers to help effectuate the sale of the Property by assisting with the performance of the closing transaction between the Plaintiff and the Buyer. In this capacity, the Lawyers were to act as an intermediary, transferring the title and the payoff between the Plaintiff and the Buyer. The Plaintiff engaged Altisource to act as a title and escrow service on its behalf, such that Altisource was responsible for holding the closing proceeds in escrow on behalf of the Plaintiff.

On February 12, 2016, Altisource sent wiring instructions to the Lawyers, identifying the bank, account holder, and account into which the Lawyers should wire the closing funds. The email including the closing instructions originated in a domain ending in "@altisource.com." Following this date, the Lawyers received several emails from Neha C. Susvirkar, an Altisource employee. These emails listed multiple email accounts for Susvirkar, with the address block of each email from Susvirkar indicating the email originated with "'Susvirkar, Neha C' <Neha.Susvirkar @altisource.com>" and was copied to "'Susvirkar, Neha C – RW' <Neha.Susvirkar@rw.altisource.com>". These emails concerned typical issues of a real estate closing transaction, including Altisource informing the Lawyers that the anticipated closing date must be extended.

The real estate transaction closed on March 15, 2016. The following day, the Lawyers emailed Susvirkar, using one of her authentic email addresses, to inform her that they had the Buyer's funds and were holding them in trust. Twelve days later, on March 28, 2016, the

Lawyers again emailed Susvirkar, once more at one of her authentic email addresses, to inform her that they were still awaiting wire instructions, and that they would not accept any liability for funds the seller did not receive in a timely manner. Approximately one and half hours later, the Lawyers received an email from "Susvirkar, Neha C' neha.susvirkar@altisources.org".[1] The email contained a signature block that was identical to those found in emails from Ms. Susvirkar. The email also included instructions to wire the closing funds to a Wells Fargo account.

The Lawyers reasonably believed these instructions originated with Altisource, and wired the payoff amount of $158,671.80 to Wells Fargo, as per the instructions. Altisource then waited until the latter part of April, 2016, to inquire about the status of the payoff. Based on information later presented by Altisource, it became clear that an unknown party (the "Hacker") had gained access to Altisource's email accounts (the "Hack"), posed as Altisource, inserted himself into the middle of the transaction without any interference from Altisource, and then sent fraudulent instructions to the Lawyers. The payoff wired by the Lawyers was therefore misdirected — presumably to the Hacker — and the Plaintiff never received it. The Plaintiff subsequently filed the instant suit to recover the closing funds.

### B. Deutsche Bank's Complaint Against The Lawyers

The allegations contained in the Plaintiff's Complaint confirm a number of the facts recited in the General Background section, above. Critically, the Plaintiff alleges that "[a]t all times relevant to this action, Plaintiff employed Altisource Portfolio Solutions ("Altisource"), as a title and escrow service." (ECF 1 at ¶ 9). The Plaintiff also alleged that "Altisource was responsible for holding the Closing Funds in escrow for Plaintiff." (ECF 1 at ¶ 9).

The Plaintiff further alleges that Altisource first sent closing instructions to the Lawyer

---

[1] The Lawyers' Third-Party Complaint alleges this occurred on March 18, 2016. This is a scrivener's error, and the Lawyers agree this event occurred on March 28, 2016.

on February 12, 2016. (ECF 1 at ¶ 10). Altisource emailed these instructions from an email address ending in "@altisource.com." (ECF 1 at ¶ 13). The closing instructions included information identifying the account to which the Lawyers should wire the payoff, and directed that the payoff be wired within 24 hours of the closing. (ECF 1 at ¶¶ 10 and 11).

The Complaint further alleges that the closing took place on March 15, 2016, at which time the Buyer tendered the payoff to the Lawyers. (ECF 1 at ¶ 15). It also alleges that the Hacker emailed wiring instructions to the Lawyers on March 28, 2016, and that the Hacker's email originated from an account ending in "@altisources.org." (ECF 1 at ¶¶ 17, 18). The Complaint does not allege that any communication took place between the Plaintiff, Altisource, or the Lawyers between March 15 and March 28, 2016.

### C. The Lawyers' Third-Party Complaint

The Lawyers filed a Third-Party Complaint against Altisource for contribution and equitable indemnity. The Lawyers offered a number of factual allegations and a detailed narrative of events in support of their claims. These include that on March 15, 2016, the Lawyers performed a closing transaction for the Property and that the Plaintiff engaged Altisource as its agent to facilitate the real estate transaction, including by communicating with the Lawyers and conveying payoff instructions to the Lawyers (ECF 6 at ¶¶ 8-11). The Lawyers further allege that, in March of 2016, the Hacker compromised Altisource's email system and obtained confidential communications and financial information. (ECF 6 at ¶¶ 12 and 13).

The confidential information obtained by the Hacker included emails between the Lawyers and Altisource concerning the real estate closing. (ECF 6 at ¶ 14). Those emails allowed the Hacker to learn about the details of the real estate transaction, including the time during which the Buyer was supposed to pay the Plaintiff. (ECF 6 at ¶ 15). The Hacker then

mimicked Altisource's email address, insinuated himself into the transaction, and instructed the Lawyers to wire funds to a new account that did not belong to the Plaintiff, instructions that the Lawyers followed.  (ECF 6 at ¶¶ 16 and 17).

Additionally, the Lawyers allege in their Third-Party Complaint that Altisource knew or should have known about the Hacker's compromise of its email accounts.  (ECF 6 at ¶ 18).  The Lawyers further allege that Altisource failed to notify its customers or business associates that its system had been compromised.  (ECF 6 at ¶ 18).  Furthermore, the Lawyers allege that, even though the closing occurred on March 15, 2016, Altisource did not inquire into the location of the payoff until the latter part of April, 2016.  (ECF 6 at ¶ 19).  This extensive delay made it impossible to recover the proceeds.  (ECF 6 at ¶ 19).  The Lawyers deny that any negligence or breach of contract on their part was a proximate cause of the Plaintiff's damages.  (ECF 6 at ¶¶ 21 and 33).

### D.      Altisource's Motion to Dismiss

In response to the Third-Party Complaint, Altisource filed a Motion to Dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(6), together with a supporting memorandum (the "Memorandum").  The Memorandum outlines three chief arguments in support of the Motion to Dismiss: (1) the Lawyers' claim for equitable indemnification is barred by (a) the source of duty rule and (b) by the Lawyers' own active negligence; (2) the Lawyers' claim for contribution is barred because Altisource does not owe the Plaintiff any duty in tort; and (3) the Lawyers' claims lack adequate factual support.  For the reasons provided below, each of these arguments must fail.

## II.     STANDARD OF REVIEW

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002).   When ruling on a 12(b)(6) motion, a court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514, 122 S. Ct. at 998 (citation omitted).   A motion to dismiss under 12(b)(6) tests only "the sufficiency of the complaint,"  and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation omitted).   Indeed, when considering a Rule 12(b)(6) motion, "[c]ourts must assume that the facts alleged in the plaintiff's complaint are true. *Fletcher v. Tidewater Builders Ass'n*, 216 F.R.D. 584, 588 (E.D. Va. 2003) (citation omitted).

*Bell Atlantic Com v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) emphasizes the relatively low bar required for a complaint, and clarifies that to survive a 12(b)(6) motion to dismiss, the allegations of a complaint must be "plausible" and enough "to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.   Whether the court itself actually believes the factual allegations is irrelevant, and "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965 (internal quotations and citation omitted).  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) further explicates the 12(b)(6) standard announced in *Twombly*. *Iqbal* held that a "legal conclusion can provide the framework of a complaint," but "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.   The Court also

held that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This Court has had numerous occasions to incorporate the pleading standards set forth in *Twombly* and *Iqbal* into its own rulings. In *Francisco v. Verizon S. Inc.*, Civil Action No. 3:09cv737, 2010 U.S. Dist. LEXIS 77083 (E.D. Va. July 29, 2010), it noted that "*Twombly* and *Iqbal* require only minimal facts establishing plausibility…." *Francisco*, 2010 U.S. Dist. LEXIS 77083 at 25. To make a determination under this standard, this Court must take those facts and, if they are well-pleaded, assume they are true, and draw all reasonable inferences from them in the Lawyers' favor. *Bennett v. Bank of Am., N.A.*, Civil Action No. 3:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725, at *14 (E.D. Va. Apr. 18, 2012) (citation omitted); *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 746 (E.D. Va. 2016) (citation omitted). The test then becomes whether the Third-Party Complaint "place[s] the legal conclusions it makes in context of facts that render the asserted claim plausible." *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 800 (E.D. Va. 2014).

## III. ARGUMENT

### A. The Court Must Accept the Lawyers' Allegation Regarding the Data Breach

Altisource argues that the Lawyers failed to plead sufficient facts regarding the Hacker's breach of Altisource's system. Altisource's argument misreads the Third-Party Complaint and misinterprets applicable law. At this stage, the Court must accept the factual allegation related to the Altisource Hack as true.

In its Memorandum, Altisource concludes that the Lawyers' factual allegation regarding the Altisource Hack is deficient because it is only a "conclusion[] based on mere speculation." In essence, Altisource urges this Court to disregard the factual allegation of the Hack, because it is

not supported by any other alleged facts, and is therefore an impermissible conclusion based on speculation. The tautological standard against which Altisource asks this Court to judge the Third-Party Complaint is of Altisource's own making. It finds no support in the law, as evidenced by Altisource's telling lack of any supporting citation to its desired rule.

The recognized legal standard is that, when judging a 12(b)(6) motion, this Court must accept the facts alleged by the Lawyers as true. *Bennett,* 2012 U.S. Dist. LEXIS 54725, at *14; *Fletcher*, 216 F.R.D. at 588 (citing *McNair v. Lend Lease Trucks*, 95 F.3d 325, 327 (4th Cir. 1996). Here, those facts include that the Hacker infiltrated Altisource's system in March of 2016. The facts alleged also include that by breaching Altisource's system, the Hacker was able to gain access to confidential communications and financial information, from which he was able to insert himself unobtrusively into the real estate transaction, and, plausibly posing as Altisource, direct the wiring of funds to an improper account. If Altisource wishes to attack any of those facts, it may deny them and then conduct appropriate discovery. Alternatively, Altisource may argue that the facts alleged do not "permit the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," as it does elsewhere in its Memorandum. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. What Altisource may not do is ask this Court to simply disregard certain of the Lawyers' well-pleaded facts.

This, however, is precisely what Altisource urges. The standard for evaluating legal claims at the motion to dismiss stage is that each claim must be supported by enough facts that it raises the right to relief above the level of speculation, such that the claim is plausible. *Conyers v. Va. Hous. Dev. Auth.*, Civil Action No. 3:12CV458-JRS, 2012 U.S. Dist. LEXIS 134908, at *7 (E.D. Va. Sep. 19, 2012); *Francisco*, 2010 U.S. Dist. LEXIS 77083 at *25. Altisource asks this Court to take that requirement, that a *legal claim* be supported by sufficient facts, and use it as

the standard for evaluating *the facts themselves*.  Under Altisouce's suggested standard, the Court

may only accept a fact — and by extension any claim that fact supports — if the fact is itself

supported by sufficient other facts such that it is not "speculative."  While the facts alleged by the

Lawyers are more than sufficient to establish the plausibility of their claims,[2] on this issue that is

beside the point.  The Lawyers' claim may eventually succeed or fail based on the facts they have

pleaded, but at this stage, under the accepted standard for *Rule* 12(b)(6) motions to dismiss,

Altisource may not attack the facts themselves.  *Bennett,* 2012 U.S. Dist. LEXIS 54725, at *14;

*Fletcher*, 216 F.R.D. at 588 (citing *McNair*, 95 F.3d at 327).

Ironically, Altisource supports its argument that the hacking allegation amounts to an

impermissibly naked assertion by making several naked assertions of its own.  According to

Altisource, the hacking allegation is insufficient because it lacks supporting facts, including: (1)

media reports that the Hack took place; (2) allegations from others about similar hacks; and (3)

the provision of details concerning "the timing, methods, or identity of the hacker."  (ECF 13 at

p. 13).  Regarding these supposed deficiencies of their factual allegations, the Lawyers are

unaware of any requirement that factual allegations in a federal complaint must be corroborated

by contemporaneous media accounts.  Nor are the Lawyers aware of any holding that a fact must

be disregarded or a complaint dismissed in the absence of similar complaints from third parties.

Altisource cites no such authority.

As to the alleged lack of details concerning the timing, methods, or identity of the

Hacker, the Lawyers have alleged that the Hack took place in March of 2016, and have provided

ample allegations regarding how the Hacker inserted himself into the underlying real estate

---

[2] Indeed, the details are very plausible, given that on August 11, 2016, Altisource sent an email
to the Lawyers indicating Altisource had learned of fraudulent emails sent to multiple closing
offices with which Altisource transacted.  Given that admission, it is not merely plausible that
Altisource was the source of the Hack, it is likely.

transaction and conducted his exploit. As to the technological means by which the Hacker was able to gain access to Altisource's system, it should come as no surprise that the Lawyers do not possess this information. After all, the Lawyers' allegation is not that their own system was hacked, but that the Hacker infiltrated Altisource's system. Information concerning how the Hacker perpetrated the Hack itself, and what efforts, if any, Altisource has made to identify the Hacker, are issues to explore in discovery.

The case cites that Altisource provides in Section III of its Memorandum are equally unavailing. Altisource provides general cites to *Twombly* and *Iqbal*. These cases do not involve the court striking any facts on which the plaintiffs' claims were based for the reason they did not enjoy the support of additional alleged facts. Instead, each case turned on whether the facts pleaded were sufficient bases for asserted causes of action. *Iqbal*, 556 U.S. at 687, 129 S. Ct. at 1954 ("[w]e hold that respondent's complaint fails to plead sufficient facts to state a claim for purposeful and unlawful discrimination."); *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974 (where the Court required, but the plaintiff did not provide "only enough facts to state a claim to relief that is plausible on its face."). As to *Hales v. City of Newport News*, No. 4:11CV28, 2011 WL 4621182 (E.D. Va. Sept. 30, 2011), elements of that case turned, again, not on the veracity of the facts pleaded, but whether the sum total of those facts were a sufficient basis for the plaintiff's claims. *Hales*, 2011 WL 4621182, at *8, 20, 26. Similarly, the court in *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) accepted the facts alleged by the plaintiff as true while at the same time dismissing the plaintiff's complaint. *Id*. at 197. Altisource's case citations do nothing more than highlight its confusion regarding the standard under which this Court must treat factual allegations at the motion to dismiss stage, as opposed to the standard by which the Court must examine the Lawyers' legal allegations based on those facts.

### B.  The Third-Party Complaint Properly States a Claim for Indemnity

#### 1.  Equitable indemnity generally

"Equitable indemnification arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another." *Carr v. Home Ins. Co.*, 250 Va. 427, 429, 463 S.E.2d 457, 458 (1995).  A party in that situation may "recover from the negligent actor for the amounts paid to discharge the liability." *Carr*, 250 Va. at 429, 463 S.E.2d at 458. In the instant case, the Lawyers deny they have breached any contract with the Plaintiff, or that they are in any way liable to the Plaintiff for negligence.  Nonetheless, in the event a jury determines that the Lawyers have some legal liability to the Plaintiff, such liability is caused at least in part by Altisource's own negligence.

#### 2.  The source of duty rule does not bar the claim for equitable indemnity

Altisource accurately states the general law that the source of duty rule "prohibits allegations of negligence stemming from duties created by contract."  (ECF 13 at p. 7). Altisource's application of that rule to the facts of this case is, however, in error.  The source of duty rule generally requires that, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007) (internal quotations omitted).  Stated another way, "[i]f the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (*because no duty apart from contract to do what is complained of exists*) then the action is founded upon contract, and not upon tort." *Augusta Mut. Ins. Co.*, 274 Va. at 207-08, 645 S.E.2d at 295 (emphasis added).  Thus, while the source of duty rule bars actions in tort that are based on duties arising in contract, it does not bar actions based

on duties that arise independently of a contract. This includes where the source of the duty is statutory. *S. Bank & Tr. Co. v. Woodhouse*, 92 Va. Cir. 402, 407 (Norfolk 2016).

In the instant case, there are several applicable duties that arise independently of contract. For one, Altisource is a "financial institution" under the Gramm-Leach-Bliley Act, 16 C.F.R. 313.3(k)(1) and (2) ("GLB"). The Buyers and the Lawyers are "customers" of Altisource under the Act because Altisource provided services to the Buyer during the real estate transaction, and the Buyer therefore "obtained" those services from Altisource. 16 C.F.R. 313.3(e) and (h). GLB requires every financial institution to "develop, implement, and maintain a comprehensive information security program that is written in one or more readily accessible parts and contains administrative, technical, and physical safeguards that are appropriate to your size and complexity, the nature and scope of your activities, and the sensitivity of any customer information at issue." 16 C.F.R. 314.3(a). The purpose of the security program is to: "(1) [i]nsure the security and confidentiality of customer information; (2) [p]rotect against any anticipated threats or hazards to the security or integrity of such information; and (3) [p]rotect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer." 16 C.F.R. 314.3(b). Altisource's failure to protect the Buyer's personal information is *prima facie* evidence that it breached this statutory duty. This breach was a proximate cause of the Hack and the resulting damages.

Section 5 of the Federal Trade Commission Act ("FTCA § 5") provides an additional source of duties. It declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). In recent years, the Federal Trade Commission has brought a number of actions alleging that deficient information security practices constitute "unfair or deceptive acts or

practices" within the meaning of the statute.  These include a complaint filed against Wyndham Worldwide in the U.S. District Court for the District of New Jersey in 2012.  That Complaint alleged that Wyndham, which experienced multiple hacks of its system, had failed "to employ reasonable and appropriate measures to protect personal information against unauthorized access."[3]  Because Altisource's unreasonably lax security protocols permitted a breach of its system, it breached the statutory duties articulated by 15 U.S.C. § 45(a)(1) that it owes to the parties whose data it gathered, thereby harming the Plaintiff and, if they are found liable, the Lawyers.

Along similar lines, the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq*. (the "VCPA") prohibits a supplier, in connection with a consumer transaction, from "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits."  Va. Code § 59.1-200(A)(5).  Altisource, a supplier under the VCPA,[4] proclaims on its website that "[w]e take appropriate security measures to protect personal data against loss, misuse and unauthorized access, alteration, disclosure, or destruction.  Altisource has taken steps to ensure the ongoing confidentiality, integrity, availability, and resilience of systems and services processing personal data, and will endeavor to restore the availability and access to such personal data in a timely manner in the event of an incident.  In addition, we train our employees about the importance of information privacy and security."[5]  In light of the Hack

---

[3] Complaint, *FTC v. Wyndham Worldwide Corp.*, No. CV 12-1365-PHXPGR (D. N.J. June 26, 2012) (amended Aug. 9, 2012).

[4] See Va. Code § 59.1-198.  Altisource "advertises, solicits [and] engages in consumer transactions."  Additionally, a company is considered a "supplier" under the VCPA where, as here, it committed a fraudulent act "in connection with a consumer transaction."  *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011) (internal quotation and citation omitted).

[5] See Altisource Privacy Statement, available at https://altisource.com/privacy-statement, last visited on May 11, 2018.

and Altisource's failure to provide timely and proper notice, the statements on Altisource's website amount to a misrepresentation. This constitutes another breach of a statutory duty that contributed to cause the damages in this case.

Finally, Altisource also violated Virginia's breach notice statute (the "Notice Statute"). That statute requires that "[a]n individual or entity that maintains computerized data that includes personal information that the individual or entity does not own or license shall notify the owner or licensee of the information of any breach of the security of the system without unreasonable delay following discovery of the breach of the security of the system, if the personal information was accessed and acquired by an unauthorized person." Va. Code § 18.2-186.6(D). The notice must include, *inter alia*, a general description of the incident, the type of information that the hacker obtained, and the responsive measures being taken by the breached organization. Va. Code § 18.2-186.6(A). In this case, Altisource has still not produced any such notice to the Buyer or the Lawyers, and the Lawyers do not know whether Altisource has even provided it to the Plaintiff. Had Altisource complied with its statutory obligation to provide notice "without unreasonable delay," then the Lawyers would not have followed the Hacker's fraudulent instructions, or would have frozen the wired funds before the Hacker absconded with them. Altisource's failure to comply with the Notice Statute was therefore another proximate cause of the damages at issue in this case.

### 3. The economic loss rule does not bar the claim for equitable indemnity or contribution

Altisource's argument, which it relegates to a single footnote in its Memorandum, that the economic loss rule bars the Lawyers' claims for equitable indemnity and contribution, is mistaken. "[T]he economic loss rule is intended to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their

agreement." *Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). The benefit of this rule is that "it prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." *Richmond*, 918 F.2d at 446 (4th Cir. 1990).

In this case, the Lawyers are not party to, and have not pleaded the existence of, any contract between them and the Plaintiff, or them and Altisource. The Lawyers therefore do not complain that this nonexistent contract has been breached, and therefore are not barred from recovering in tort. While the economic loss rule may bar the Plaintiff from bringing a claim for negligence against Altisource, it does not bar the Lawyers' claims for contribution and indemnity against Altisource, particularly where, as above, the Lawyers have identified duties owed by Altisource which arise out of statute, not contract.

Altisource is correct that the economic loss rule bars a party from bringing "an action in tort to recover disappointed economic expectations." *Sensenbrenner v. Rust, Orling & Neal, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988). That rule, however, does not apply to the Lawyers' claims. The Lawyers have not brought their claims for contribution or indemnity in order to recover "disappointed economic expectations." Again, the Lawyers were not a party to any contract with the Plaintiff or Altisource. The payment that the Hacker absconded with was the consideration in a contract between the Plaintiff and the Buyer. The Lawyers did not stand to benefit from this contract or the payoff amount, and the Hacker's theft of that amount therefore cannot be said to have disappointed the Lawyers' economic expectations. The Plaintiff, as the party to which the contract required payment be made, is the party whose expectations have been disappointed. The Plaintiff has sued the Lawyers in an attempt to recover those economic expectations. The Lawyers, in turn, have simply asserted claims to prevent or mitigate

any loss on their part.  Because their claims do not arise from contract and do not relate to any frustrated economic expectations on their part, the economic loss rule is not a bar.

### 4.	The Lawyers deny negligence, and there can be no finding of "fault" at this stage such that their equitable indemnity claim is barred

Altisource argues that the Lawyers' claim for equitable indemnity must fail because the Lawyers are "not without fault."  As above, "[e]quitable indemnification arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another."  *Carr v. Home Ins. Co.*, 250 Va. 427 *, 463 S.E.2d 457, 1995 Va. LEXIS 136. Altisource is therefore correct that Virginia law requires a lack of "personal fault" for a litigant to recover for equitable indemnity.  <u>See</u> *Carr*, 250 Va. at 429, 463 S.E.2d at 458.  The critical issue is what constitutes personal fault.  Altisource's claim that the Lawyers' actions must necessarily bar their claim for equitable indemnification is contrary to the Fourth Circuit's interpretation of personal fault.

The Fourth Circuit examined this issue in *Wingo v. Celotex Corp.*, 834 F.2d 375 (4th Cir. 1987).  The Court concluded that no litigant can recover for indemnification where that party has itself "been guilty of an independent act of negligence."  *Wingo*, 834 F.2d at 377.  To reach this conclusion, the Wingo Court examined a previous case, *General Electric Co. v. Moretz*, 270 F.2d 780 (4th Cir. 1959), in which it had barred recovery for equitable indemnity, and noted that in that case the party seeking recovery was guilty of an act of negligence.  *Wingo*, 834 F.2d at 378. Further buttressing the Wingo Court's decision was the case of *Maryland Cas. Co. v. Aetna, etc., Co.*, 191 Va. 225, S.E.2d 876 (1950), in which the Court permitted recovery for equitable indemnity because the party seeking recovery was not guilty of any act of negligence.

In the instant case, the Plaintiff alleges that the Lawyers are liable to it for negligence and for breach of contract.  The Lawyers deny that they had or breached any contract with the

Plaintiff, and similarly deny that they owed any duty to the Plaintiff or were negligent in any way. Nonetheless, it is possible that a factfinder might determine that the Lawyers did have a contract with the Plaintiff and that they technically breached that contract.

In that event, it is also very likely that a factfinder will determine the Lawyers did not owe any duty in tort to the Plaintiff, or that they were otherwise not negligent. This outcome is likely because negligence requires the establishment of "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damages." *Factory Mut. Ins. Co. v. DLR Contracting, Inc.*, Civil Action No. 3:04CV834, 2005 U.S. Dist. LEXIS 25876, at *15 (E.D. Va. Oct. 20, 2005). In the instant case, however, neither the Plaintiff nor Altisource have identified any duty that the Lawyers owed to the Plaintiff. Furthermore, the hallmark of a negligence action is whether the actions of the defendant were reasonable. See *Liberty Mut. Fire Ins. Co. v. J M Smith Corp.*, 602 F. App'x 115, 120 (4th Cir. 2015). Any factfinder will mostly likely conclude that it was reasonable for the Lawyers, while in the middle of a real estate transaction, to respond to an email that: (1) bore an email address that was very similar to the multiple email addresses used by one of their contacts at Altisource; (2) had the signature block used by that contact throughout the transaction; (3) was sent quickly and in direct response to an email sent by the Lawyers to a valid Altisource email address; and (4) clearly indicated familiarity with the transaction. Altisource cites no case to the contrary. If a factfinder were to conclude that the Lawyers breached some agreement with the Plaintiff, but that the Lawyers were not guilty of negligence, then the Lawyers would be without "personal fault" as the Fourth Circuit interprets that term.

### C. The Third-Party Complaint Properly Asserts a Claim for Contribution

The Lawyers' Third-Party Complaint properly asserts a claim for contribution. Virginia Code § 8.01-34 provides that "contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." Va. Code § 8.01-34. To the extent the Lawyers are found liable to the Plaintiff for breach of contract and/or negligence, then the Plaintiff's harm was caused at least in part by the negligence of Altisource.

### 1. Negligence *Per Se*

To successfully assert a claim for negligence, a plaintiff must prove four elements: (1) duty; (2) breach of that duty; (3) proximate causation of; (4) damages. *Richardson v. Lovvorn*, 199 Va. 688, 692, 101 S.E.2d 511, 514 (1958). In Section III(B)(2), above, the Lawyers identified four state and federal statutes that create relevant duties on the part of Altisource. Each of these statutes may be used as the basis for a claim of negligence *per se*.

"The doctrine of negligence *per se* represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].' The elements of negligence *per se* are well-established. First, the plaintiff must prove that the defendant violated a statute enacted for public safety. Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. Third, the statutory violation must be a proximate cause of plaintiff's injury." *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 496, 706 S.E.2d 864, 872 (2011) (internal quotations and citations omitted).

Each of the statutes listed in III(B)(2) have as their goal the protection of elements of the public, and were therefore enacted for public safety. In order to determine whether any particular statute was enacted for public safety, it cannot be considered in isolation, but rather

must be taken in the context of other related statutes. *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 497, 706 S.E.2d 864, 873 (2011) (finding that "statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement"). Additionally, it is appropriate to interpret the statute at question according to its plain meaning. *Parisi v. Cash*, 91 Va. Cir. 415, 420 (Cir. Ct. 2015).

By its name alone, it is clear that the purpose of the VCPA is to protect the public from various abuses. This conclusion is buttressed by the stated intent of the Act, which is to "be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. Similarly, the intent of the Notice Statute is to protect the public from the theft of its personal information and identities, a goal that is enforced with severe penalties. Regulations promulgated under GLB are to "protect the security and confidentiality of [] customers' nonpublic personal information."[6] 15 U.S. Code § 6801. FTCA § 5 exists to prevent "substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S. Code § 45(n). All of these statutes have the express goal of safeguarding the personal information of the public, with the aim of keeping the public safe from financial predation.

The next issue, then, is whether the Lawyers fall into the class of persons for whose benefit each statute was enacted, and whether the statute was intended to prevent the type of harm that befell them. With respect to GLB, there is no question this is the case, because a legal

---

[6] There is some precedent for the use of the GLB as the foundation for a claim of negligence *per se* to recover for wrongfully disclosed personal information. See *Owens v. Dixie Motor Co.*, 2014 U.S. Dist. LEXIS 59006 (E.D.N.C., March 31, 2014).

representative is specifically included within the definition of a consumer and, by extension, a customer. 16 C.F.R. § 313.3(e) and (h). The Lawyers are also intended beneficiaries of the remaining statutes, since they regularly handle financial transactions on behalf of their client consumers. The Federal Trade Commission act does not discriminate between the types of consumers whose data should be protected. Neither the VCPA nor the Notice Statute carve out attorneys from their protections. Furthermore, GLB and the Notice Statute both attempt to frustrate the attempts of hackers and to safeguard personal information. They therefore exist to prevent exactly the type of harm that occurred here. Additionally, the VCPA and FTCA § 5 exist to protect consumers from unfair and practices and false promises. To the extent the Lawyers were harmed by Altisource's substandard information security practices, that is the type of harm these statutes were enacted to prevent.

While the question of whether a statute was enacted for public safety and whether the plaintiff belongs to the protected class are questions of law, "[t]he question of whether the violation of a statute is a proximate or efficiently contributing cause of an accident is usually a question of fact for a jury to determine. *Thomas v. Settle*, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994) (internal quotations omitted). Here, the question of whether the Hacker's successful infiltration was due to Altisource's substandard security practices in violation of the statutes above is a question for the finder of fact, to be addressed after the parties have had the opportunity to conduct discovery. So, too, is the question of whether the loss of the closing funds was due to Altisource's failure to provide timely notice of the Hack.

**2.**    **Altisource Failed to Observe Ordinary Care and Was Therefore Negligent**

As evidenced by the breach of its system, a breach that it did not notice or at least did not report to its business associates for many weeks, Altisource failed to act with ordinary care to

safeguard private information. In its Memorandum, Altisource argues that Virginia has no common law duty to safeguard private information, and in support cites the lack of any contrary holding from the Supreme Court of Virginia. Recent precedent from this Court, however, lays the foundation for the recognition of that duty.

In *Dilday v. DIRECTV, LLC*, Civil Action No. 3:16CV996-HEH, 2017 U.S. Dist. LEXIS 47195 (E.D. Va. Mar. 29, 2017), this Court was called to determine the viability of a plaintiff's claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. The plaintiff alleged that his rights under the act were violated when Equifax released his credit report to DirecTV for an impermissible purpose. *Dilday*, 2017 U.S. Dist. LEXIS 47195, at *3.[7] While analyzing the legal principals at issue, the Court noted that "the common law has long recognized a right to personal privacy, and both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *Id.* at *9 (internal quotation and citation omitted). According to *Dilday*, therefore, the common law of Virginia recognizes the right of persons such as the Buyer and the Lawyers to control their private information.

This Court recently considered the rights and duties that are implicated when a person such as the Hacker impermissibly accesses and uses private information. In *Bile v. RREMC, LLC*, Civil Action No. 3:15cv051, 2016 U.S. Dist. LEXIS 113874 (E.D. Va. Aug. 24, 2016), a malicious third party hacked into the system of a plaintiff's attorney, and sent fraudulent wiring instructions to a defense attorney with whom the plaintiff's counsel had recently settled a case.

---

[7] The Court dismissed Dilday's claim because he failed to plead what actual damages he suffered as a result of the alleged impropriety, and as a result lacked standing. *Dilday*, 2017 U.S. Dist. LEXIS 47195, at *12. Standing is not an issue in this case. Because it proceeds on the basis of equitable indemnity and contribution, the Lawyers' right to recovery is premised upon their suffering an actual harm.

*Bile*, 2016 U.S. Dist. LEXIS 113874 at *3-4, 18-19. The defense attorney followed the fraudulent wiring instructions and, unbeknownst to him, wired the money to the malicious third party. *Id*. The plaintiff then moved to enforce the settlement agreement. *Id*. at *5.

To resolve the issue of which party should bear responsibility, the Court drew heavily from principles articulated by Article 3 of the U.C.C., despite the fact that Article 3 concerns negotiable instruments and *Bile* was a case of wire fraud. *Id.* at *25. The Court supported this decision by noting that "Article 3 is persuasive in areas of law which it does not directly govern." *Id.* at *24. The principles from Article 3 on which the Bile Court relied include: (1) that "ordinary care…means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged;" (2) that "a blameless party is entitled to rely on reasonable representations, even when those reasonable representations are made by fraudsters;" and (3) that a person bearing a loss "may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." *Id*. at *26-29. The Bile Court concluded that, because the plaintiff's attorney had failed to observe ordinary care, and "because that failure substantially contributed to the loss," the plaintiff must bear the loss. *Id*. at *35-36.

The Bile case supplies important considerations for the instant matter. Those considerations are not diminished by the fact that *Bile* concerned the interpretation of a settlement agreement because, as the Bile Court recognized, in the absence of authority that is directly on point, the principles articulated in Article 3 of the UCC may provide guidance. *Id.* at *25. Here, as Altisource points out in its Memorandum, there is no controlling authority from the Supreme Court of Virginia. Absent this, the common law's longstanding recognition of a right to privacy, the basic tenets of the law of negligence, and the principles of UCC Article 3,

yield the rule that a person must observe reasonable standards to safeguard private information, or is negligent.

Applying the duty articulated in *Bile* to the facts of the instant case, Altisource breached its duty to use ordinary care to protect private information. That breach was a proximate cause, at least in part, of the success of the Hacker's exploit and the theft of the closing funds. Therefore, to the extent the Lawyers are found liable for the plaintiff's alleged damages, they are entitled to contribution from Altisource as a joint tortfeasor.

## IV.    CONCLUSION

At the motion to dismiss state, the Court is required to accept the Lawyers' well-pleaded factual allegations, and Altisource's attempt to have this Court disregard the allegation that Altisource was hacked must fail. This fact, together with the others pleaded by the Lawyers, supports a cause of action for equitable indemnity, because the Lawyers acted reasonably and Altisource's own negligence caused the loss of the closing payment. Neither the source of duty rule nor the economic loss rule bar the Lawyers' claim for equitable indemnity, because the duties that Altisource violated arise independently of contract, and the Lawyers did not suffer any frustrated economic expectations. Furthermore, the Lawyers have a valid claim for contribution, not only because Altisource's violation of several statutes supports claims for negligence *per se*, but also because Altisource breached its duty to use ordinary care to protect the private information of third parties.

Respectfully submitted,

**CRAIG BUCK, and**
**THE BUCK LAW FIRM, PC**

By Counsel

23

_/s/ Christopher K. Jones_
Christopher K. Jones (VSB No. 75051)
Andrew Biondi (VSB No. 48100)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, VA 23218-1998
Phone: (804) 648-1636
Facsimile: (804) 783-7291
cjones@sandsanderson.com
abiondi@sandsanderson.com
_Counsel for Defendants and Third-Party Plaintiffs_

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of electronic filing

to:

D. Kyle Deak, Esq. (VSB No. 65391)
Jessica A. Clark, Esq. (VSB No. 90627)
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
(919)8335-4133 (O)
(919)829-8725 (fax)
kyle.deak@troutman.com
Jessica.clark@troutman.com
*Counsel for Plaintiff*

Christopher L. Perkins (VSB No. 41783)
Scott A. Siegner (VSB No. 89570)
LeClairRyan PLLC
919 E. Main St. 24th Floor
Richmond, Virginia 23219
Phone: (804) 783-7550
Fax: (804) 783-7686
cperkins@leclairryan.com
scott.siegner@leclairryan.com
*Counsel for Third-Party Defendants*


    /s/ *Christopher K. Jones*
Christopher K. Jones (VSB No. 75051)
Andrew Biondi (VSB No. 48100)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, VA 23218-1998
Phone: (804) 648-1636
Facsimile: (804) 783-7291
cjones@sandsanderson.com
abiondi@sandsanderson.com
*Counsel for Defendants and*
*Third-Party Plaintiffs*