IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR
HOME EQUITY MORTGAGE LOAN
ASSET-BACKED TRUST SERIES
INABS 2006-A, HOME EQUITY
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES SERIES INABS 2006-A,

    Plaintiff,

v.                                                                                  Civil Action No. 3:17cv833

CRAIG BUCK, and
THE BUCK LAW FIRM, PC,

    Defendants, and
    Third-Party Plaintiffs,

v.

ALTISOURCE PORTFOLIO
SOLUTIONS, INC.,

    Third-Party Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Third-Party Defendant Altisource Portfolio Solutions, Inc.'s ("Altisource") Motion to Dismiss the Buck Parties'[1] Third-Party Complaint (the "Motion to Dismiss"). (ECF No. 12.) The Buck Parties responded, (ECF No. 16), and

---

[1] Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust Series INABS 2006-A, Home Equity Mortgage Loan Asset-Backed Certificates Series INAS 2006-A ("Deutsche") brings the original complaint in this action (the "Deutsche Complaint") against the Buck Law Firm and Craig Buck (collectively, the "Buck Parties"). (Deutsche Compl. 1, ECF No. 1.) The Buck Parties jointly bring a third-party complaint (the "Buck Third-Party Complaint") against Altisource. (Buck Third-Party Compl. 1, ECF No. 6.)

Altisource replied, (ECF No. 17). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court properly exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will grant the Motion to Dismiss and grant the Buck Parties leave to amend the Buck Third-Party Complaint.

## I. Procedural and Factual Background

### A. Procedural Background

Deutsche filed a two-count complaint against the Buck Parties, asserting one breach of contract claim and one negligence claim. The Buck Parties timely filed an Answer to the Deutsche Complaint. (ECF No. 4.)

Thirteen days after they filed their Answer, the Buck Parties filed their Third-Party Complaint against Altisource, alleging claims for contribution and equitable indemnification. Altisource filed the Motion to Dismiss, the Buck Parties responded in opposition, and Altisource replied.

### B. Factual Allegations[3]

The allegations in both the Deutsche Complaint and the Buck Third-Party Complaint arise from a real estate transaction in which an unidentified, non-party hacker (the "Hacker")

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

[3] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Buck Third-Party Complaint as true, and draw all reasonable inferences in favor of the Buck Plaintiffs. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

allegedly caused funds to be misdirected to the Hacker and away from the proper party, Deutsche. Deutsche had engaged the Buck Parties to perform the closing as part of the real estate transaction. Deutsche had also engaged Altisource to act on its behalf in effectuating the real estate transaction. In its role, Altisource "communicate[d] with the parties to the transaction and facilitate[d] the sale and [c]losing." (Buck Third-Party Compl. ¶ 9.) As part of its duties, Altisource communicated with the Buck Parties and "convey[ed] to the [Buck Parties] payoff instructions for the [c]losing." (*Id.* ¶¶ 10–11.)

According to the Buck Parties, prior to closing the real estate transaction the Hacker obtained access to "confidential email communications containing the financial information of Altisource's customers, like Deutsche." (*Id.* ¶ 13.) From this breach, the Hacker learned of the upcoming funds transfer between the buyer of the real estate and Deutsche. With this knowledge, the Hacker "mimicked" the email address Altisource used and provided fraudulent wiring instructions to the Buck Parties. (*Id.* ¶ 16.) The Buck Parties received the transfer money from the buyer and, following the fraudulent wiring instructions, wired the money to a bank account that presumably belonged to the Hacker. At the time, the Buck Parties believed they had wired the money to a Deutsche account.

The Buck Parties contend that "Altisource knew or should have known of the hacking that had been taking place in its email . . . and . . . failed to notify and warn its customers (like Deutsche . . . ) or those with whom it had business (like the [Buck Parties] . . .)." (*Id.* ¶ 18.) The Buck Parties aver that, even though the closing took place on March 15, 2016, and the Buck Parties transferred the funds on March 18, 2016, Altisource did not inquire about the transfer until "the latter part of April[] 2016." (*Id.* ¶¶ 17, 19.) According to the Buck Parties, Altisource's delay made it impossible to track the misdirected funds.

3

## II. Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a third-party complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the [third-party] complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A third-party complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79.

## III. Analysis:
## The Court Will Grant the Motion to Dismiss Because the Buck Third-Party Complaint Fails to Identify a Duty *Altisource* Owed to *Deutsche*

### A. Materials Beyond the Scope of the Court's Consideration

Because briefing by all parties extends far beyond allegations in the Buck Third-Party Complaint, the Court feels constrained to clarify what allegations and arguments it will not consider in assessing the Motion to Dismiss, and why. Altisource has not demonstrated how or why the Court can incorporate the Deutsche allegations when weighing dismissal of an entirely separate Third-Party Complaint. Nor does the record reflect that the Buck Parties agree to considering such facts. Especially because the Court reviews all well-pleaded factual allegations in the Buck Third-Party Complaint favorably to the Buck Parties, the Court will not look to these allegations for purposes of the third-party Motion to Dismiss.

#### 1. Altisource's Argument Regarding the Source of Duty Rule Fails Because the Existence of a Contract Lies Beyond the Scope of the Court's Consideration

First, citing both the Deutsche Complaint and the Buck Third-Party Complaint, Altisource contends that a contract governs the relationship between Altisource and Deutsche. Altisource then invokes Virginia's source-of-duty rule, which provides that "[a] tort action cannot be based solely on a negligent breach of contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). According to Altisource, because a contract governs, the Buck Parties cannot sustain the tort-based negligence claims that stand before the Court.[4]

---

[4] The Court describes the Buck Parties' claims for equitable indemnification and contribution, which represent derivative claims that turn on whether Altisource's negligence caused Deutsche's loss, below.

5

Under the source-of-duty rule, the Court must determine whether the "source of the duty" originates in tort or contract. *Richmond Metro. Auth.*, 507 S.E.2d at 347. The Supreme Court of Virginia has found that "in certain circumstances [a party can] show both a breach of contract and a tortious breach of duty," but "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

On the record here, the Court cannot determine the source of any duty Altisource may have owed to Deutsche. Not only does the Buck Third-Party Complaint omit any mention of a contract, the Buck Parties deny that one exists. (*See* Resp. Mot. Dismiss 15.) The Court cannot consider Altisource's added information in evaluating the Motion to Dismiss. *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))). Viewing only the allegations in the Buck Third-Party Complaint, the Court will not accept Altisource's attempt to allege a contractual relationship via a third-party motion to dismiss.

### 2. Altisource's Additional Factual Allegations Lie Beyond the Scope of the Court's Consideration

As evinced above, Altisource tries to insert factual allegations from the Deutsche Complaint—such as the existence of a contract—to support the Motion to Dismiss at bar. But Altisource veers even farther away from permissible advocacy when it attempts to rely on facts alleged *only* in the Deutsche Complaint. (*See* Mem. Supp. Mot. Dismiss 11, ECF No. 13 (attempting to establish that fault lay with the Buck parties because they failed to see that the malicious email included the domain (*"@altisources.org"*) differed from the legitimate email (*"@altisource.com"*) (citing allegations in the Deutsche Complaint ¶¶ 13, 18)).) It remains

6

axiomatic that the Court will not consider this additional information in deciding the Motion to Dismiss. *Akzo, N.V.*, 770 F. Supp. at 1068.

### 3. The Buck Parties' Introduction of Statutory and Regulatory Grounds for Creating the Source of a Duty Lie Beyond the Court's Consideration

The Buck Parties also rest their arguments on an expanded record this Court cannot consider. In their response to the Motion to Dismiss, the Buck Parties provide new factual details about what preceded the fraudulent transfer, as well as information about a notice the Buck Parties received from Altisource regarding other suspected cyber-attacks.

The Buck Parties also improperly raise new legal theories in their response to the Motion to Dismiss. They cite, for the first time, one federal statute, one federal regulation, and two state statutes as potentially supporting their claims that Altisource owed a legal duty to Deutsche.[5] But, as noted above, the Buck Third-Party Complaint brings common law claims bereft of any statutory footing. Because the Buck Parties did not include this information in their Third-Party Complaint, the Court will not consider these statutes in deciding the Motion to Dismiss. *Akzo, N.V.*, 770 F. Supp. at 1068.

### B. The Claims Altisource Seeks to Dismiss

Based on the misdirection of funds to the Hacker rather than to it, Deutsche sued the Buck Parties for negligence and breach of contract. The Buck Parties deny any negligence. Instead, the Buck Parties filed a Third-Party Complaint against Altisource, seeking recovery

---

[5] The newly-referenced federal statute is Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). The Buck Parties also cite a Federal Trade Commission regulation enacted pursuant to the Gramm-Leach-Bliley Act, 16 C.F.R. 313.3(k)(1). The two newly-referenced Virginia statutes are the Virginia Consumer Protect Act, VA. CODE § 59.1-196; and, Virginia's Breach Notice Statute, VA. CODE § 18.2-186.6(D). The Court will not evaluate these improperly raised contentions.

under two theories: (1) contribution; and, (2) equitable indemnification. The Buck Parties, in their Third-Party Complaint, do not raise any claim stemming from a statute or regulation. Rather, they allege that Altisource breached five duties it owed to *Deutsche*, not the Buck Parties, under Virginia law:[6]

> (1) "a duty to Deutsche . . . to use reasonable care in securing the confidential and financial information flowing through [Altisource] email accounts and servers," (Buck Third-Party Compl. ¶ 23);
>
> (2) "a duty to Deutsche . . . to use reasonable care in the conduct of its business, including maintaining close communication with the [Buck Parties] . . . regarding the [c]losing and related payoff instructions," (*Id.* ¶ 24);
>
> (3) "a duty . . . to prevent hackers from pirating Deutsche['s] . . . financial information and business transactions," (*Id.* ¶ 25);
>
> (4) a duty to "discover and remedy breaches of its information systems security before breaches resulted in Deutsche['s] . . . financial loss," (*Id.* ¶ 26.); and,
>
> (5) "a duty to quickly notify vendors and businesses with which Deutsche . . . conducts business (like the [Buck Parties] . . . ) about breaches of its cybersecurity affecting its communications with those vendors and businesses," (*Id.* ¶ 27).

These duties all arise, according to the Buck Parties, from a common law duty to safeguard the private information of another. Through the duties, which Altisource allegedly breached, the

---

[6] The parties do not dispute that Virginia law governs the Buck Parties' claims for contribution and indemnification, nor could they. "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Klein v. Verizon Commc'ns, Inc.*, 674 Fed. Appx. 304, 307 (4th Cir. 2017) (quoting *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004)). "Virginia 'applies the *lex loci delicti*, the law of the place of the wrong, to tort actions.'" *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (quoting *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998)). "Under Virginia law, the 'place of the wrong' is the place 'the last event necessary to make an [actor] liable for an alleged tort takes place.'" *Id.* (quoting *Gen. Assur. of Am. Inc. v. Overby-Seawell*, 533 Fed. Appx. 200, 206 (4th Cir. 2013)).

8

Buck Parties allege that *Altisource's* acts constitute the proximate cause of Deutsche's loss, not the Buck Parties' actions.

Because equitable indemnification and contribution typically can be brought only as claims derivative of another party's claim, this, indeed, is the only way the Buck Parties can pursue these two claims.[7] Here, for instance, the Buck Parties must first establish *Altisource's* legal duty to *Deutsche*, so this Court can then hold *Altisource* derivatively liable for any liability the *Buck Parties* may incur from the Deutsche Complaint.

In filing this suit, the Buck Parties invoke a developing area of law: whether or how to impose liability on a party whose potentially negligent conduct flows from a data breach. In so doing, the Buck Parties rely on what they call a duty to safeguard the private information of another individual. Case law directly on point is sparse. Although some courts have found that a party may proceed on a negligence claim against an entity who suffered a data breach,[8] others

---

[7] Both equitable indemnification and contribution typically present as derivative claims. *See Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d 113, 117 (W.D. Va. 2007); *Kohl's Dep't Stores, Inc. v. Target Stores, Inc.*, 214 F.R.D. 406, 414 (E.D. Va. 2003).

> Such a claim is viable only where a proposed third party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff.

*Kohl's Dep't Stores, Inc.*, 214 F.R.D. at 414 (quoting *Watergate Landmark Cond. Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)).

[8] *See, e.g., In re Target Corp. Customer Data Security Breach Litigation*, 64 F. Supp. 3d 1304, 1309–10 (D. Minn. 2014) (applying Minnesota law to find that plaintiffs "plausibly pled a general negligence case," at the motion to dismiss stage, where they alleged that Target "disable[ed] certain security features and fail[ed] to heed the warning signs as the hackers' attack began").

9

remain reluctant to do so.[9] Because the Buck Parties fail to establish a legal duty *Altisource* owed to *Deutsche* under Virginia law, the Court must dismiss both claims. But the Court will grant the Buck Parties leave to file an Amended Third-Party Complaint.

### C. The Buck Parties Have Not Established a Common Law Duty Altisource Owed to Deutsche Under Virginia Law

To establish their equitable indemnification and contribution claims, the Buck Parties must establish that *Altisource* negligently breached a duty it owed to *Deutsche*, the injured party. *See* VA. CODE § 8.01-34; *Carr v. Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995). To properly state a claim for negligence under Virginia law, the Buck Parties must show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owner's Ass'n*, 585 S.E.2d at 548 (citing *Fox*, 372 S.E.2d at 375; *Trimyer*, 66 S.E.2d at 443); *see Delk*, 523 S.E.2d at 830. The Buck Parties contend that the legal duty at bar is the common law duty to safeguard the private information of another. Based on the allegations in the Buck Third-Party Complaint, the Buck Parties fail at the first step of this analysis: the existence of a legal duty Altisource owed to Deutsche.

In response to the Motion to Dismiss, and in an effort to establish the common law duty required to support their claims, the Buck Parties assert that two cases from the United States

---

[9] *See Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, No. 15-cv-01125-MJR, 2017 WL 1551330, at *2–*4 (S.D. Ill. May 1, 2017) (finding as to plaintiffs' a negligence claim against Schnuck following a data breach, that "under Missouri law [Schnuck] . . . had no duty to protect customer information on the Plaintiffs' behalf"); *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2016 WL 7409916, at *4 (N.D. Ill. Dec. 22, 2016) (finding that where the purchaser presumably sent the payment to a hacker because of a fraudulent email, no duty existed to support the seller's negligence claim because the Illinois Supreme Court had not declared that a duty to safeguard another's confidential information existed, meaning that the legislature, and not a lower court, should act); *Willingham v. Global Payments, Inc.*, No. 1:12-cv-01157-RWS, 2013 WL 440702, at *18 (recommending that the district court dismiss plaintiffs' negligence claims because under Georgia law "no duty of care exists in the data breach context where . . . there is no direct relationship between the plaintiff and the defendant").

District Court for the Eastern District of Virginia "lay[] the foundation for the recognition of" a duty "to safeguard private information." (Resp. Mot. Dismiss 20-21, ECF No. 16.) One of the cases the Buck Parties highlight has persuasive value: *Bile v. RREMC, LLC*, No. 3:15cv051, 2016 WL 4487864 (E.D. Va. Aug. 24, 2016). The second case, however, *Dilday v. DIRECTV, LLC*, No. 3:16cv996-HEH, 2017 WL 1190916 (E.D. Va. Mar. 29, 2017), falls in line with several cases from the United States Court of Appeals for the Fourth Circuit that turn on issues too distinguishable from those at bar to offer insight to this decision. Neither *Bile* nor *Dilday* carries the Buck Parties across the line of surviving this Motion to Dismiss.

In *Bile*, the Court evaluated the consequence of settlement funds that had been improperly wired to a non-party hacker as the result of fraudulent instructions contained in a malicious email. Factually, this mirrors the case before this Court. But the entire *Bile* analysis turned on the interpretation of a contract: the settlement agreement. *See generally Bile*, 2016 WL 4487864. The *Bile* court found that when the defendants wired the settlement fund, albeit erroneously, they completed their *contractual* performance that the settlement agreement required. *Id.* at *13. Next drawing on contract principles found in Article 3 of the Uniform Commercial Code, the court concluded that the defendants "acted with ordinary care," meaning that, given the substantial performance of their obligations, plaintiffs could not compel the defendants to make another payment.[10] *Id.* Thus, the *Bile* court did not address whether Virginia

---

[10] The *Bile* court observed that Bile's attorney had received fraudulent emails, knew of their existence, and told Bile about the emails. 2016 WL 4487864 at *3. Based on these observations, the court found that both the plaintiff and his attorney "knew the email account of the . . . [l]aw [g]roup was implicated in that fraudulent activity." *Id.* Although the Buck Parties claim that Altisource "knew or should have known of the hacking," they allege no facts in the Buck Third-Party Complaint to support this conclusory allegation. (Buck Third-Party Compl. ¶ 18.)

11

*common* law creates a duty to safeguard private information, something the Buck parties must show in order to proceed with their claim.

*Dilday* does not persuade for different reasons. The *Dilday* court assessed a Fair Credit Reporting Act ("FCRA") claim and turned on injury-in-fact, or standing, an issue that many courts continue to grapple with when evaluating statutes that allow only limited statutory damages for a violation. 2017 WL 1190916 at *5. Altisource plucks from *Dilday* language acknowledging that "the common law has long recognized a right to personal privacy, and 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'" *Id.* at *3 (quoting *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016)). But *Dilday* did not turn on the issue of personal privacy rights; the court simply found that Dilday could not establish a sufficient concrete injury to create standing because the FCRA did not codify a common law tort. *Id.* at *3–*4. Altisource does not, and could not, challenge injury in fact here, nor do they pursue a FCRA or analogous claim.

Because the Buck Parties do not claim that a contract existed among any of the parties, and they fail to establish that Virginia law recognizes a common law duty to protect an individual's private information from an electronic data breach, the Court cannot find that *Bile* or *Dilday* reinforces the Buck Parties' claims. Consequently, the Court cannot conclude that *Altisource* owed a duty to *Deutsche*, meaning that the *Buck Parties* cannot meet the first prong of the negligence claim that undergirds their equitable indemnification and contribution claims.

### D. Because the Buck Parties Fail to Establish a Common Law Duty Altisource Owed to Deutsche, the Buck Parties' Claims for Equitable Indemnification and Contribution Must Fail

Both the Buck Parties' claim for equitable indemnification and their claim for contribution require the Buck Parties to show that Altisource's negligence caused Deutsche's

economic loss. Because the Buck Parties failed to establish the existence of a common law duty Altisource owed to Deutsche, a necessary element to support a showing of negligence, both of the Buck Parties' claims must fail.

### 1. The Buck Parties' Equitable Indemnification Claim, Which Requires A Showing of Altisource's Negligence, Must Fail

The Buck Parties first seek to hold Altisource derivatively liable on a theory of equitable indemnification. Under Virginia law, a party may seek equitable indemnification "when a party without personal fault,[11] is nevertheless legally liable for damages caused by the negligence of another." *Carr*, 463 S.E.2d at 458. "A prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage. Without that determination, neither the negligent actor nor the innocent party can be held liable for the damages claimed." *Id.*

Here, Deutsche asserts that the Buck Parties' negligence caused the money owed Deutsche to be wired to a bank account not associated with Deutsche. The Buck Parties, in turn, assert that because Altisource negligently breached the duties it owed to Deutsche, Altisource must indemnify the Buck Parties for any liability the Buck Parties may incur. As the Court previously found, the Buck Parties failed to establish a common law duty Altisource owed to Deutsche. Because a finding of negligence necessarily requires the existence of a legal duty, the Buck Parties' derivative claim of equitable indemnification against Altisource, which requires a

---

[11] Altisource argues that the Court must dismiss the Buck Parties' indemnification claim because "the pleadings in this case demonstrate that they are not without fault in causing the events giving rise to Deutsche['s] . . . loss." (Mem. Supp. Mot. Dismiss 10, ECF No. 13.) At this procedural stage, the Court declines to find as a matter of law that the Buck Parties acted negligently in following the fraudulent wiring instructions.

13

showing of negligence may not proceed. The Court will grant the Motion to Dismiss as to equitable indemnification.

### 2. The Buck Parties' Contribution Claim, Which Also Requires A Showing of Altisource's Negligence, Must Fail

If the Buck Parties' equitable indemnification claim fails, they seek, in the alternative, contribution. "Virginia common law does not include a right of contribution." *Woodson v. City of Richmond*, 2 F. Supp. 3d 804, 809–10 (E.D. Va. 2014) (citing *North River Ins. Co. v. Davis*, 274 F. Supp. 146, 149 (W.D. Va. 1967), *aff'd* 392 F.2d 571 (4th Cir. 1968)). Rather, Virginia statutory law creates the right to contribution. VA. CODE § 8.01-34. Section 8.01-34 provides that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." *Id.* To properly claim contribution, a "third-party complaint must reflect that the injured party must have a valid claim for redress of an indivisible injury against both the contribution plaintiff and the contribution defendant." *Kohl's Dep't Stores, Inc.*, 214 F.R.D. at 414 (citing *Va. Elec. & Power Co. v. Wilson*, 277 S.E.2d 149, 150 (Va. 1981)). In deciding whether a party has properly pled a claim for contribution under Virginia law, the party asserting a contribution claim does not constitute the injured party. *See id.* at 414–15. Rather, the injured party is the party seeking to hold the contribution plaintiff liable. *See id.*

No allegation suggests that Deutsche's loss resulted from moral turpitude. Therefore, under the statute, the Buck Parties may assert a claim of contribution only if they can show that Altisource exists as a joint tortfeasor and that Altisource's negligence caused Deutsche's loss. *See id.* For the same reason that the Buck Parties' equitable indemnification claim failed, they also cannot assert a claim of contribution. Specifically, as discussed above, the Buck Parties

14

cannot establish that Altisource breached a legal duty it owed to Deutsche, a necessary element of establishing negligence.[12]

Because the Buck Parties did not establish that "the wrong results from negligence" as VA. CODE § 8.01-34 requires, the Court must dismiss the Buck Parties' contribution claim as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss, (ECF No. 12), and dismiss without prejudice the Buck Third-Party Complaint, (ECF No. 6). However, given the additional factual allegations contained in the response to the Motion to Dismiss and the other potential grounds for establishing a duty Altisource owed to Deutsche, the Court will allow the Buck Parties to amend their complaint.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 3/29/2019
Richmond, Virginia

---

[12] Citing to the statutes mentioned *supra* note 5, the Buck Parties argue that the doctrine of negligence *per se* satisfies the negligence required to establish their contribution claim. (Resp. Mot. Dismiss 18 (citing to various Virginia statutes).) Because the Buck Parties did not raise these statutes in the Buck Third-Party Complaint, the Court will not consider whether such allegations would support the required negligence claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Akzo, N.V.*, 770 F. Supp. at 1068 ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss" (quoting *Car Carriers, Inc.*, 745 F.2d at 1107)).